UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


DONALD THOMAS (#381628)

VERSUS                                    CIVIL ACTION

N. BURL CAIN, ET AL                       NUMBER 13-673-JWD-SCR

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, January 29, 2015.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


DONALD THOMAS (#381628)

VERSUS                                          CIVIL ACTION

N. BURL CAIN, ET AL                             NUMBER 13-673-JWD-SCR


**MAGISTRATE JUDGE'S REPORT**

Before the court is the defendants' Motion for Summary
Judgment and the plaintiff's Memorandum in Support of Motion for
Summary Judgment. Record document numbers 17 and 30, respectively.

For the reasons which follow, the defendants' Motion for
Summary Judgment should be granted in part and the plaintiff's
Memorandum in Support of Motion for Summary Judgment should be
treated as a motion for summary judgment and denied.


## I. Background

Pro se plaintiff, an inmate confined at Louisiana State
Penitentiary (hereafter "LSP"), Angola, Louisiana, filed this
action pursuant to 42 U.S.C. § 1983 against Warden N. Burl Cain,
Asst. Warden Kenneth Norris, Asst. Warden Stephanie Lamartiniere,
Dr. Rahm Singh, Dr. Jason Collins, Dr. Hal MacMurdo and Dr. Randy
Lavespere. Plaintiff alleged that the defendants were deliberately
indifferent to his serious medical needs in violation of his
constitutional rights.

Defendants moved for summary judgment relying on a statement of undisputed facts, the affidavits of Dr. Jason Collins, Dr. Raman Singh, Kenneth Norris, Stephanie Lamartiniere, Dr. Hal MacMurdo, Warden Burl Cain and Dr. Randy Lavespere, copies of the plaintiff's medical records and the results of Administrative Remedy Procedure (hereafter "ARP") LSP-2013-0865, a true copy of which was filed in the record.

Plaintiff moved for summary judgment relying on a statement of undisputed facts, his declaration, copies of his medical records, copies of his medical duty status reports, copies of position descriptions, a copy of Department Regulation No. B-06-001, excerpts from the Department of Public Safety and Corrections Services Health Care Manual, copies of Health Care Policy Nos. HC-01, HC-03, HC-11 and HC-16, and copies of Institutional Training Transcripts for Stephanie Lamartiniere.[1]

---

[1] Plaintiff also argued that allegedly unanswered requests for admissions are deemed admitted and sought to rely upon the admissions in support of his motion for summary judgment. Specifically, the plaintiff argued that because the defendants failed to answer his request for admissions, by operation of law the requests are deemed admitted. Record document number 30, pp. 6-13. However, there is no evidence in the record that the plaintiff propounded a request for admissions. Plaintiff did not file a copy of the request for admissions as was required by the court's scheduling order. *See* record document number 4. Accordingly, the purported admissions were not considered in support of the plaintiff's motion for summary judgment.

In addition, the plaintiff addressed claims in his motion for summary judgment, including but not limited to the discontinuation of medication without notice or justification, which were not raised in the complaint. Plaintiff's motion for summary judgment shall not be treated as an amendment to the complaint.

## II. Factual Allegations

Plaintiff alleged that he has a history of polio and suffers from the residual effects of the disease. In particular, the plaintiff alleged that one of his legs is more than an inch shorter than the other, which causes him severe hip and leg pain.

Plaintiff alleged that he was examined at the orthopedic clinic by Dr. Landry who stated that surgery on his hip would be beneficial.[2] Plaintiff alleged that Dr. Landry said that Dr. R. Singh ordered him not to schedule the plaintiff for surgery and prohibited him from entering a notation in the plaintiff's medical records indicating that the plaintiff needed surgery. Plaintiff alleged that he was told the surgery was not considered due to a lack of funds. Plaintiff alleged that all of his treating physicians have informed him that no surgery will be performed due to a lack of funds.

Plaintiff further alleged that he suffers from a hernia above his navel. Plaintiff alleged that Drs. MacMurdo and Lavespere said that surgery to repair his hernia would not be scheduled due to a lack of funds. Plaintiff alleged that he has voiced complaints of abdominal pain and problems with bowel movements which he associates with the hernia.

---

[2] Although not specified in the complaint, the plaintiff's motion for summary judgment seems to suggest that Dr. Landry told him that right hip surgery was necessary. Record document number 30, Memorandum in Support of Summary Judgment, p. 4.

Plaintiff alleged that the defendants adopted a policy of providing only minimal care to prisoners based upon cost. Plaintiff alleged that although he was seen at the clinic by a physician and his complaint was heard, nothing was done to resolve his medical problem. Plaintiff alleged that he must seek sick call to renew prescriptions and is being charged a co-payment. Plaintiff alleged that it can take as long as a week after presenting a complaint at sick call before he is examined by a physician.

## III. Applicable Law and Analysis

### A. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. Supporting affidavits must set forth facts which would be admissible in evidence. Opposing responses must set forth specific facts showing that there is a genuine issue for trial. Rule 56(c). Speculation, unsupported assertions, and conclusory allegations are inadequate to defeat a motion for summary judgment. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 660 (5th Cir. 2012). The court need only consider cited materials, but it may consider other materials in the record. Rule 56(c)(1)(3).

**B. Prescription**

Defendants argued that some of the plaintiff's claims are prescribed.

It is well settled that in § 1983 cases, federal courts look to the most consonant statute of limitations of the forum state. *Owens v. Okure*, 488 U.S. 235, 109 S.Ct. 573 (1989); *Kitrell v. City of Rockwall*, 526 F.2d 715, 716 (5th Cir.), *cert. denied*, 426 U.S. 925, 96 S.Ct. 2636 (1976). For § 1983 cases brought in Louisiana federal courts, the appropriate statute of limitations is one year. Louisiana Civil Code Article 3492; *Elzy v. Roberson*, 868 F.2d 793 (5th Cir. 1989); *Washington v. Breaux*, 782 F.2d 553 (5th Cir. 1986); *Kissinger v. Foti*, 544 F.2d 1257, 1258 (5th Cir. 1977). Plaintiff signed his complaint on October 7, 2013 and it was filed on October 10, 2013. Ordinarily, any claim the plaintiff had against these defendants regarding acts which occurred prior to October 7, 2012, has prescribed.

However, the holding in *Harris v. Hegmann*, 198 F.3d 153 (5th Cir. 1999), affects this court's decision. In *Harris*, the United States Court of Appeal for the Fifth Circuit concluded that the pendency of properly filed ARP proceedings will act to toll the running of the one-year limitations period for prisoners' claims in this state.

A review of the record evidence showed that the plaintiff signed an ARP on April 1, 2013, it was received by the Legal

Programs Department on April 2, 2013, and was assigned as ARP LSP-2013-0865.[3] Plaintiff complained that he was denied adequate medical treatment and surgery to reduce his hip pain and repair a hernia. The ARP was denied at the Second Step on July 30, 2013.[4]

Therefore, ARP LSP-2013-0865 tolled the limitations period between April 1, 2013, the date the plaintiff signed the ARP, and July 30, 2013, the date the ARP was denied at the Second Step of the two step procedure, for a total of 120 days.

Ordinarily, all claims arising prior to October 7, 2012, - one year before the plaintiff signed his complaint – would be prescribed. However, when the plaintiff is given the benefit of the 120 days during which the limitations period was tolled while ARP LSP-2013-0865 was pending, the prescriptive period is calculated by counting backwards 120 days from the presumptive prescriptive date, which results in a prescription date of June 8, 2012. Consequently, all claims based on medical treatment or the lack thereof prior to June 8, 2012 are prescribed.

### C. Rights of other prisoners

The right to bring an action under the civil rights act is personal in nature and may not be asserted by third parties. *Coon v. Ledbetter*, 780 F.2d 1158 (5th Cir. 1986). All persons who claim

---

[3] Record document number 29, p. 4.

[4] *Id*. at 7.

6

a deprivation of constitutional rights must prove some violation of their personal rights. *Id.*  Insofar as the plaintiff's complaint can be read to assert a deliberate indifference claim on behalf of other prisoners, the claim is not a personal right which he may assert.

### D. Official Capacity

Defendants argued that they are entitled to Eleventh Amendment immunity insofar as the plaintiff sued them in their official capacity.

The distinction between personal and official capacity suits was clarified by the U.S. Supreme Court in *Hafer v. Melo, et al,* _ 502 U.S. 21, 112 S.Ct. 358 (1991).  A suit against a state official in his official capacity is treated as a suit against the state. *Id.*, 502 U.S. at 25, 112 S.Ct. at 361, *citing Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105 (1985).  Because the real party in interest in an official-capacity suit is the governmental entity and not the named individual, the "entity's `policy or custom' must have played a part in the violation of federal law." *Graham, supra*, at 166, 105 S.Ct. at 3105.

Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under of color of state law.  A showing that the official, acting under color of state law, caused the deprivation of a federal right

is enough to establish personal liability in a section 1983 action. *Hafer*, 502 U.S. at 25, 112 S.Ct. at 362.

*Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304 (1989), makes it clear that the distinction between official-capacity suits and personal-capacity suits is more than a "mere pleading device." Officers sued in their personal capacity come to court as individuals. A state official in his or her official capacity, when sued for injunctive relief, would be a person under section 1983 because official-capacity actions for prospective relief are not treated as actions against the state. *Will*, 491 U.S. at 71, 109 S.Ct. at 2311, n. 10, *quoting Kentucky v. Graham*, 473 U.S. at 167, 105 S.Ct. at 3106, n. 14.

Thus, the plaintiff may recover money damages against the defendants insofar as the defendants were sued in their individual capacities for actions taken by them under color of state law which caused the deprivation of constitutional rights. Additionally, because the plaintiff sought prospective injunctive relief his claim against the defendants in their official capacity is also actionable under § 1983. Of course, the plaintiff must prove a deprivation of a constitutional right to obtain any relief, whether in the form of damages or prospective injunctive relief.


**E. Medical Indifference Claims**

Plaintiff alleged that he was denied adequate medical

treatment.  Specifically, the plaintiff alleged that he requires surgeries on his hip and to repair a hernia, but the defendants have implemented a policy which only authorizes a surgery when the prisoner's condition is life-threatening.  Plaintiff argued that he was denied surgery to repair his hip and hernia based on the cost and available funding rather than based on the medical necessity of the surgical procedures.

A prison official may be held liable under the Eighth Amendment for acting with deliberate indifference to an inmate's health or safety only if he knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.  *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970 (1994).  The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference.  *Id*.

To prevail on an Eighth Amendment claim for deprivation of medical care a prisoner must prove that the care was denied and that the denial constituted "deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285 (1976); *Johnson v. Treen*, 759 F.2d 1236 (5th Cir. 1985).  Whether the plaintiff received the treatment he felt he should have is not the issue.  *Estelle v. Gamble*, *supra*; *Woodall v. Foti*, 648 F.2d 268 (5th Cir. 1981).  Unsuccessful medical treatment does not provide

a basis for a civil action under 42 U.S.C. § 1983 for violation of a constitutional right. *Varnado v. Lynaugh*, 920 F.2d 320 (5th Cir. 1991), *Johnson v. Treen, supra*. Negligence, neglect or medical malpractice does not rise to the level of a constitutional violation. *Varnado, supra*.

To be liable under § 1983 a person must either be personally involved in the acts causing the alleged deprivation of constitutional rights, or there must be a causal connection between the act of that person and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756 (5th Cir. 1983). Allegations that prison officials are responsible for the actions of their subordinates is insufficient to state a claim under § 1983. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018 (1978).

Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation. *Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987); *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985), *cert. denied*, 480 U.S. 917, 107 S.Ct. 1369 (1987) (quoting *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 2037 (1978)). The existence of a constitutionally deficient policy cannot be inferred from a single wrongful act. *O'Quinn v.*

*Manuel*, 773 F.2d 605, 609, 610 (5th Cir. 1985) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427 (1985)).

Plaintiff's medical records[5] showed that the plaintiff suffers from the residual effects of childhood polio[6] and apparently has been provided a wheelchair for ambulation and comfort.[7]

Plaintiff's medical records showed that on December 19, 1997, x-rays of the plaintiff's bilateral hips and AP pelvis showed some deformity, especially involving the right hemipelvis with the right hemipelvis tilted superiorily.[8] In addition, x-rays showed some deformity of the proximal right femur and some mild widening of the right hip joint.[9] The changes were secondary to the plaintiff's polio.[10] No acute fractures were noted.[11] On February 8, 2004, x-rays of the plaintiff's right hip showed that there had been essentially no change from the previous x-rays taken on December 19, 1997.[12]

---

[5] Defendants filed more than 450 pages of the plaintiff's medical records in response to the his request for production of documents. Record document numbers 26-1, 26-2 and 26-3.

[6] Record document number 26-1, p. 34.

[7] *Id*. at 2.

[8] Record document number 26-2, p. 67.

[9] *Id*.

[10] *Id*.

[11] *Id*.

[12] *Id*. at 60.

Plaintiff's medical records showed that on December 11, 2009, a Consultant Referral Form was completed requesting an orthopedic consultation to evaluate whether the plaintiff needs surgery for his underdeveloped right hip.[13] Plaintiff was examined at the R.E. Barrow Physician's Clinic orthopedic clinic on December 21, 2009 for complaints of lower back pain and right hip pain post-polio.[14] A notation in the plaintiff's medical records indicated "D/W [discussed with] pt [patient] need for THA [Total Hip Arthroplasty] - wishes to wait."[15]

Plaintiff's medical records showed that on June 16, 2010, the plaintiff was examined at the orthopedic unit of the R.E. Barrow Treatment Center for a follow-up appointment regarding right hip dysplasia.[16] A notation in the plaintiff's medical record stated that "Patient wished to wait on surgery" and "May be candidate for PAO", a periacetabular osteotomy, a surgery on the hip socket.[17]

Plaintiff's medical records showed that on August 11, 2010, a CT of the plaintiff's right hip without contrast was conducted at Earl K. Long Medical Center.[18] The clinical impression was that

---

[13] *Id.* at 124.

[14] *Id.* at 123.

[15] *Id.*

[16] *Id.* at 117.

[17] *Id.*

[18] *Id.* at 68.

there was abnormal positioning of the right femoral head with shallow acetabular roof and underdeveloped iliac public bone and ischium suggesting a developmental lesion and mild right acetabular arthrosis.[19]

Plaintiff's medical records showed that on January 19, 2011, the plaintiff was examined at the orthopedic unit of the R.E. Barrow Physician's Clinic for complaints of hip pain.[20] The examining physician noted "-No surgery per pt."[21] On March 31, 2011, the plaintiff was examined by Dr. Lavespere at the R.E. Barrow Physician's Clinic for complaints of right hip pain.[22] Dr. Lavespere noted that the plaintiff was examined at the orthopedic clinic on January 19, 2011 and that surgery was not an option.[23]

Plaintiff's medical records showed that on August 9, 2011, the plaintiff was examined at the R.E. Barrow Physician's Clinic for complaints of abdominal pain.[24] Plaintiff's medical records showed that on August 9, 2011, the plaintiff was diagnosed as having an umbilical hernia and a Consultant Referral Form was completed requesting a general surgery consultation regarding the plaintiff's

---

[19] *Id.*

[20] *Id.* at 108.

[21] *Id.*

[22] *Id.* at 107.

[23] *Id.*

[24] *Id.* at 102.

umbilical hernia.[25]

Plaintiff's medical records showed that on August 9, 2012, the plaintiff was examined at the orthopedic unit of the R.E. Barrow Physician's Clinic for a six month follow-up appointment.[26] Plaintiff complained that his medications were not effective.[27] The medication was discontinued and a different medication was prescribed.[28] Plaintiff was scheduled for a follow-up appointment in one year.[29]

Plaintiff's medical records showed that on September 10, 2012, the plaintiff was examined by Dr. Lavespere at the R.E. Barrow Physician's Clinic for GERD and right hip pain.[30] Dr. Lavespere noted that surgery could not be performed due to lack of muscular support in hip.[31]

Plaintiff's medical records showed that on May 17, 2013, the plaintiff underwent a physical at the R.E. Barrow Treatment Center which noted an umbilical hernia and chronic hip pain.[32] Plaintiff

---

[25] *Id.* at 101.

[26] *Id.* at 86.

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.* at 83.

[31] *Id.*

[32] Record document number 26-2, p. 79.

was referred to the LSU Health System for a surgery consultation for an umbilical hernia.[33]

Plaintiff's medical records showed that on August 2, 2013, the plaintiff was examined at the orthopedic unit of the R.E. Barrow Physician's Clinic for an annual appointment.[34] X-rays were ordered, medication was prescribed and another appointment was scheduled.[35] On October 29, 2013, the plaintiff was examined by Dr. Lavespere at the R.E. Barrow Physician's Clinic for right hip pain.[36] Plaintiff reported a history of polio and that he had been told he needed hip replacement before he could walk again.[37] Plaintiff reported that he had been scheduled for surgery several times.[38] Dr. Lavespere noted that the plaintiff was non-ambulatory and had been in a wheelchair for one-and-a-half years.[39] Plaintiff's medications were modified.[40]

Plaintiff's medical records showed that on January 17, 2014, the plaintiff was examined at the orthopedic unit of the R.E.

---

[33] *Id.* at 77.

[34] *Id.* at 75.

[35] *Id.*

[36] *Id.* at 72.

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.*

Barrow Physician's Clinic for left shoulder bursitis and right hip end stage osteoartritis.[41]  Plaintiff was given an injection for his shoulder and was to be scheduled for a follow-up appointment in three to four months.[42]

Defendants conceded that there has been a backlog for hernia surgeries.[43]  Defendants contend that the backlog resulted from the closure of the LSU Charity Hospital by the Louisiana Department of Health and Hospitals, and they had no control of whether the hospital was closed.[44]

The summary judgment evidence showed that for an inmate confined at LSP to be scheduled for surgery, the treating physician at the state penitentiary must make an initial recommendation to EKL/LSU Medical.[45]  The recommendation would go before a Surgical Board at EKL/LSU Medical (hereafter "EKL/LSU Surgical Board") or other treating hospital which would decide whether to proceed with the scheduling of the surgery or deny the surgery.[46]

Plaintiff's medical records showed that on December 11, 2009,

---

[41] *Id.* at 70.

[42] *Id.*

[43] Record document numbers 17-5 and 17-6, Affidavit of Kenneth Norris and Affidavit Stephanie Lamartiniere, respectively.

[44] *Id.*

[45] Record document number 17-4, Affidavit Dr. Raman Singh.

[46] *Id.*

a Consultant Referral Form was completed requesting an orthopedic consultation to evaluate whether the plaintiff is a surgical candidate regarding his hip[47] and again on August 9, 2011, to evaluate his umbilical hernia.[48] Although notations in the plaintiff's medical records indicate that the plaintiff declined hip surgery, the plaintiff denies that he did so.[49]

Even though there may be many facts that are not genuinely disputed, on summary judgment the court must draw all reasonable inference from both the disputed and undisputed facts in favor of the party opposing summary judgment. All of the summary judgment evidence has been considered. Drawing all reasonable inferences in favor of the plaintiff, as the party opposing the defendants' summary judgment motion, the summary judgment evidence is sufficient for a reasonable jury to find that during the period after June 8, 2012, the defendants were deliberately indifferent to the plaintiff's serious need for hip and hernia surgery. There is no evidence that the EKL/LSU Surgical Board affirmatively determined before June 8, 2012 that the plaintiff did not need, or would not benefit from, surgery. Nonetheless, the defendants' chosen procedure for obtaining medically needed surgery did not

---

[47] Record document number 26-2, p. 124.

[48] *Id*. at 101.

[49] Record document number 30, p. 16; see also record document number 30-2, plaintiff's Declaration Under Penalty of Perjury in Support of Motion for Summary Judgment.

result in the surgery being performed. A reasonable jury could find that the defendants knew the closure of EKL would result in delaying surgery for so long that the plaintiff could no longer benefit from it and consequently it would not be approved by the EKL/LSU Surgical Board. Therefore, a reasonable jury could find that the defendants' decision to rely on LSU/EKL doctors to perform necessary surgery, while knowing that the surgery would not be performed unless the need for it became an emergency, was deliberate indifference to the plaintiff's serious medical needs.

For essentially the same reasons, the plaintiff's summary judgment motion should also be denied. Viewing all of the summary judgment evidence in the light most favorable to the defendants, the parties opposing the plaintiff's summary judgment motion, a reasonable jury could find that the defendants provided reasonably prompt and appropriate medical evaluation and treatment for the plaintiff's hip and hernia conditions. There is no evidence any defendant actually denied the plaintiff hip or hernia surgery due to LSP budget constraints.

### F. Medical Co-payment

Plaintiff alleged that prisoners are charged a co-payment for medical services. Plaintiff alleged that as a result prisoners must chose between seeking medical care and purchasing items from the canteen, including hygiene items.

There is no summary judgment evidence to show that the medical co-payment fee acted as a functional denial of medical care by requiring the plaintiff to obtain *either* medical care *or* basic necessities. *See Morris v. Livingston*, 739 F.3d 740, 746-48 (5th Cir. 2014).

Plaintiff further alleged that the Department of Corrections is in violation of LSA-R.S. 15:831(B)(2) because it is charging a co-payment even though the regulation was not promulgated within the Louisiana Registry in accordance with the Administrative Procedure Act.

A violation of a state statute alone is not cognizable under § 1983 because § 1983 is only a remedy for violations of federal statutory and constitutional rights. *Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005); *Jackson v. Cain*, 864 F.2d 1235, 1252-53 (5th Cir. 1989).

This claim has no merit as a matter of fact and law.

**G. Supplemental Jurisdiction**

Plaintiff sought to invoke the supplemental jurisdiction of this court. District courts may decline to exercise supplemental jurisdiction over a claim if the claim raises a novel or complex issue of State law; the claim substantially predominates over the claims over which the district court has original jurisdiction; if the district court has dismissed all claims over which it had

original jurisdiction; or for other compelling reasons. 28 U.S.C. § 1367. Plaintiff's allegations of deficient and unsuccessful medical care amount to state law negligence or medical malpractice claims. The court should decline to exercise supplemental jurisdiction over such state law claims.

## RECOMMENDATION

It is the recommendation of the magistrate judge that:

(1) the defendants' Motion for Summary Judgment be granted in part, dismissing the plaintiff's Eighth Amendment deliberate medical indifference claims arising before June 8, 2012, and his claim based on the requirement that he and other inmates make a co-payment insofar as such claim is based on a violation of the Eighth Amendment;

(2) the plaintiff's Memorandum in Support of Motion for Summary Judgment be treated as a motion for summary judgment and be denied;

(3) the court decline to exercise supplemental jurisdiction over any state law claims and that these claims be dismissed without prejudice; and,

(4) this action be referred back to the magistrate judge for further proceedings on the plaintiffs Eighth Amendment deliberate medical indifference claims arising on or after June 8, 2012, based

on the failure to provide hip and hernia surgery.

Baton Rouge, Louisiana, January 29, 2015.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE